**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN DOE, a minor;
JANE DOE, on her own behalf
and as next friend of John Doe;

Case No.

Plaintiffs,

Hon.

v

CHARLOTTE PUBLIC SCHOOLS;
CHARLOTTE PUBLIC SCHOOLS BOARD OF EDUCATION;
SUPERINTENDENT MANDY STEWART, in her personal and official capacity;
PRINCIPAL RYAN GUIMONT, in his personal and official capacity;
DIRECTOR OF SPECIAL EDUCATION GRETCHEN MCCLELLAN-VANARSDALE, in her personal and official capacity;
DEAN OF STUDENTS CHRIS HEISLER, in his personal and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

**COMPLAINT**

NOW COME Plaintiffs John Doe (hereinafter, "John"), and Jane Doe, by and through their attorneys at Delaporte Lynch, PLLC, and file their Complaint against Defendants for failure to accommodate under the Americans with Disabilities Act ("ADA"), retaliation under the ADA, violation of the Person with Disabilities Civil Rights Act ("PWDCRA"), retaliation under the

PWDCRA, violation of the First Amendment via the vehicle of §1983, and violation of Article I §5 of the Michigan Constitution. Plaintiffs seek compensatory, exemplary, and punitive damages, compensation for emotional and physical damages, attorney's fees, and costs for the violations of their rights as protected under federal and state laws, as well as any other damages the Honorable Court deems just.

VENUE AND JURISDICTION

1. Defendant Charlotte Public Schools, (hereinafter, "Defendant CPS," or "CPS"), is a Michigan governmental entity situated entirely in Eaton County, Michigan, in this Honorable Court's territorial jurisdiction.
2. Defendant Charlotte Public Schools Board of Education, (hereinafter, "Defendant Board of Education," or "Board of Education"), is a Michigan governmental entity situated entirely in Eaton County, Michigan, in this Honorable Court's territorial jurisdiction.
3. During all material times, Defendant Mandy Stewart (hereinafter, "Defendant Stewart"), was Superintendent of Charlotte Public Schools.
4. During all material times, Defendant Ryan Guimont (hereinafter, "Defendant Guimont"), was Principal of the Charlotte Public Schools' middle school.
5. During all material times, Defendant Gretchen McClellan-VanArsdale (hereinafter, "Defendant McClellan-VanArsdale"), was Director of Special Education at the Charlotte Public Schools' middle school.
6. Plaintiff John Doe is a special needs student who resides within the territorial boundaries of Defendant CPS.
7. Plaintiff Jane Doe is the mother and next friend of Plaintiff John Doe, who resides within the territorial boundaries of Defendant CPS.

8. This Honorable Court retains subject matter jurisdiction under 28 U.S.C. §1331 based on the First Amendment and the Americans with Disabilities Act claims, and supplemental jurisdiction of the state law claims under 28 U.S.C. §1367(a).
9. All of the acts complained herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.
10. The amount in controversy exceeds $75,000.00.
11. Thus, legal jurisdiction and venue are proper in this Honorable Court.

## FACTS

### *Background*

12. Plaintiffs incorporate the previous paragraphs as if contained herein.
13. Prior to the 2025-2026 school year, Plaintiff John Doe was homeschooled.
14. John's mother, Jane Doe, enrolled John in CPS at the beginning of the 2025-2026 academic year.
15. John is a Fourteen (14) year-old special needs student who has been diagnosed with Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder ("ADHD"), Generalized Anxiety Disorder, Other Specified Trauma- and Stressor-related Disorder, debilitating Migraines, and Mild Intellectual Disability.
16. Accordingly, Jane Doe requested an Individualized Education Program ("IEP") for John.
17. On October 8, 2025, CPS executed an IEP report, determining John was ineligible for an IEP because "he demonstrated weaknesses in all areas but no strengths," and there was "evidence to suggest that the suspected disability may have been due to a lack of appropriate instruction in math or the essential components of reading."

18. CPS's finding that "the suspected disability may have been due to a lack of appropriate instruction in math or the essential components of reading," was directly contradicted by the diagnoses of medical and psychological experts, and documentation that John's homeschool curriculum was monitored and sufficient.
19. CPS was aware that its alleged "diagnosis" was intentionally fraudulent and intended to avoid its responsibilities under (and the additional costs associated with), the PWDCRA and the ADA.
20. Following the IEP denial, CPS executed a Section 504 Plan for John.
21. On October 23, 2025, Jane Doe emailed Ms. Katherine Crips, one of John's teachers, to alert CPS that a girl in John's class was harassing John by shutting John's Chromebook on his fingers, dropping his Chromebook, kicking him under the table, threatening to poke his eyes, and threatening to fight him based in great part on a conflict motivated by the girl's reaction to John's special needs.
22. On November 3, 2025, another girl threw items at John during art class, shoved him to the ground, and caused John to severely hit his head. Once again, the bullying, harassment, and assault appeared motivated by the girl's reaction to John's special needs.
23. John's eyes started to hurt, and he could not remember where he was supposed to go after class.
24. John texted Jane Doe about the incident and told her he was not feeling well.
25. Consequently, Jane Doe picked John up from school and took him to the Emergency Room for assistance.
26. The Emergency Room physician determined that John suffered a head injury, and he needed to follow up with his primary physician for further care.

27. The assault was so severe that it impacted the function of John's tongue, and his primary physician had to order an emergency MRI due to John's immense pain.
28. The same day, Jane Doe emailed the art teacher about the assault and, once again, had to request a change in seat assignments to separate the students bullying John.
29. John's teacher did nothing more than assert that John was bothering the girl who assaulted him, but that, regardless, shoving John was not appropriate.
30. John's teacher's inaction violated §1310 of the Revised School Code and was discriminatory under the ADA due to John's disabilities.
31. Jane Doe then restated that John was not bothering the girls and, rather, they were throwing objects at him and harassing him based upon his lack of social skills caused by his autism.
32. John Doe's teacher once again took no substantive action to end the discriminatory and harassing behavior targeting John Doe's disabilities.
33. Jane Doe also emailed multiple CPS administrators requesting a formal hearing on the assault and other bullying.
34. On November 5, 2025, Jane Doe met with Defendant Guimont to discuss the assault, bullying, and harassment leading up to it, which resulted in the District removing John from art class and, instead, enrolling him in a second physical education class.
35. Although CPS refused to inform Jane Doe of the disciplinary action taken against John's assaulter under the guise of FERPA compliance, upon information and belief, the student did not receive any discipline for physically assaulting John (a violation of MCL 380.1310).

36. Following his head injury, John continued to experience symptoms that made attendance at school impossible and impractical.

37. On November 6, 2026, Jane Doe gave CPS a letter from John's physician requesting his excused absence from November 5, 2026, through November 13, 2026, and that John would be re-evaluated on November 13, 2026.

38. Jane Doe also informed CPS on November 14, 2025, that she intended to file a police report due to the assault.

39. Because John continued to suffer from symptoms of the head injury, he was not in regular attendance; however, Jane Doe continued to update CPS on John's progress.

40. On December 2, 2025, Jane Doe emailed CPS that John's health was beginning to improve, and she provided a letter from MSU Healthcare stating that John suffered a concussion in the assault, that he was under a doctor's care, and that the doctor requested his absence from school through December 19, 2025.

41. Jane Doe also requested an IEP re-evaluation following the assault because John had developed additional vision and memory issues.

42. On or around December 2, 2025, John's teacher invited Jane Doe to review John Doe's placement.

43. On Jane Doe's way out, the school counselor's door was open, and there were no students in the counselor's office, so Jane Doe asked if she could speak with the counselor, who provided permission.

44. Jane Doe was understandably emotional about the assault and John's resulting health problems, crying and expressing that she was hurt by the incident and the school's lackluster response to her son's assault.

45. Rather than performing her duties under the Revised School Code related to a student-on-student physical assault, and related to the disability discrimination and harassment, the counselor made a threatening statement that someone was going to see all of John's absences (which were medically excused), alluding to potential truancy issues.

46. On December 9, 2025, in response to Jane Doe's advocacy, CPS informed Jane Doe in front of her younger son that she was now banned from the hallways, citing that she had interrupted the counselor.

47. Jane Doe sought clarification on the ban, and Defendant Guimont stated that Jane Doe had not complied with the visitor handbook, and she was not allowed to "pop into" other classrooms, offices, etc.

48. However, Jane Doe was invited to review John Doe's placement; she was not there as a volunteer, she never signed any volunteer paperwork, nor was she informed of any prohibition on speaking with the counselor (something that was available to other parents).

49. John Doe continued to suffer medical challenges which necessitated time away from school.

50. Shortly after, despite CPS's knowledge of John's medical status and verified medical documents, Jane Doe began receiving truancy threats on January 6, 2026.

51. Due to CPS's refusal to provide John Doe with a reasonable accommodation under the ADA, Jane Doe was forced to withdraw him from school and enroll John in homebound services.

52. The retaliatory truancy case against Jane Doe was eventually put on hold while the homebound education process was underway.

53. For homebound services, Jane Doe presented CPS with a letter from John's physician establishing that he suffered from post-concussion syndrome, experiencing symptoms such as vision changes, migraines, anxiety, and post-traumatic stress.

54. The letter also indicated that a homebound education was medically necessary for John, and he would be re-evaluated every four weeks.

55. John continued to receive homebound educational services throughout the beginning of 2026, and he was re-evaluated for an IEP on February 18, 2026.

56. Jane Doe notified CPS during the IEP meeting that John would be off homebound services by April 24, 2026, and asserted that upon his return, John would have a service dog.

57. The evaluation determined that John was indeed eligible for an IEP, but Defendant McClellan-VanArsdale refused to include John's service dog in his IEP.

58. John's medical providers determined that he would need a service dog to fully access his educational benefits but would be unable to be the full-time dedicated handler and would require a third-party handler.

59. On April 13, 2026, Jane Doe notified CPS that John would return with his service dog, and that Jane Doe would be the service dog's handler because the District refused to provide a dedicated, trained, third-party handler.

60. CPS maintained that John did not need a third-party handler, and outrightly refused to accommodate John's reasonable accommodation without any alternatives.

61. A physician deemed that John was unable to independently handle his service dog and, therefore, needed a third-party handler, such as Jane Doe, to assist.

62. Jane Doe provided CPS with the physician's documentation.

63. CPS then changed its stance, stating that any third-party handler other than Jane Doe would suffice (CPS's insurance attorney would later reiterate that any third-party handler would be acceptable, except Jane Doe).

64. The only notable "negative" difference between Jane Doe and an outside, third-party handler is her advocacy on behalf of John's special needs.

65. Jane Doe requested a letter from CPS's insurance attorney affirming that she could not be the handler but was never provided with said letter.

66. When Jane Doe visited CPS's regular attorney's website, it explicitly stated that parents were acceptable handlers for service dogs.

67. After CPS was alerted to the information on their regular attorney's website, the webpage was quickly removed.

68. CPS's retaliatory pattern continued on or about April of 2026 when Jane Doe visited her younger son at the District's elementary school, which she had done several times before (about once every other week for the prior semester).

69. Jane Doe was signed in under "lunch with a student" and had a visitors tag on, just as she previously had done.

70. The CPS upper elementary principal confronted Jane Doe, told her that adults are not allowed in the cafeteria, and stated this was a District policy that Defendant Stewart could give her.

71. Jane Doe frequently interacted with staff in the cafeteria during her prior visits, and no one ever informed her of this "rule."

72. To avoid a scene in front of the children, Jane Doe left.

73. The CPS upper elementary principal's statements were inconsistent with the school handbook, the fact that volunteers were allowed in the cafeteria, and the office staff's statements that other parents were allowed to visit the cafeteria.
74. CPS also targeted Jane Doe's family regarding the service dog's space within the school.
75. CPS has multiple therapy dogs (emotional support animals), and when the therapy dogs need to relieve themselves, they go to a shaded and grassy courtyard.
76. On April 22, 2026, prior to John's return to in-person classes, Jane Doe and John visited CPS in after-school hours to do a walk-through with John's service dog.
77. Defendants Guimont and McClellan-VanArsdale were present.
78. John and his service dog were sent to the South Courtyard, which is rocky, unshaded, and scattered with debris, making it unsafe for the dog (a fact that Jane Doe's vet confirmed).
79. When John asked to use the safe courtyard, Defendant McClellan-VanArsdale told Jane Doe and John that it was the therapy dogs' "special place" and that he was not going to take that away from them, a violation of the ADA and PWDCRA.
80. CPS's refusal to either provide a third-party handler or allow Jane Doe to be a third-party handler, and the District's refusal to accommodate the service animal in the safe outdoor area, prevented John Doe from returning to school due to Defendants' violations of law.
81. Since asserting John's rights in April, CPS has consistently prevaricated and created a false narrative of excuses for not allowing John Doe the reasonable accommodation of his service animal, accompanied by a third-party handler.
82. Defendants falsely assert that Jane Doe cannot be the handler because she is parent and parents are not allowed in the classroom (a violation of MCL 380.1137).

83. Defendants claim that allowing Jane Doe to be the handler would violate the Family Educational Rights and Privacy Act ("FERPA") and Health Insurance Portability and Accountability Act ("HIPPA").

84. Defendants' FERPA policy provides for broad categories of "directory information" and does not protect curriculum or instruction, only limited personally identifiable information contained in a student record (which would be protected from all individuals in the classroom, including other students).

85. FERPA does not protect curriculum or instruction; in fact, MCL 380.1137 grants parents a statutory right to review instruction and curriculum.

86. Defendants are all trained in FERPA and knowingly made false statements that Jane Doe's presence would violate FERPA in order to avoid their duty to provide a reasonable accommodation.

87. HIPPA, similar to Defendants' pretextual FERPA concerns, is unaffected by parental presence in the classroom.

88. Defendants have a volunteer program (that Jane Doe was once a frequent participant of before retaliatorily revoking her rights to volunteer), where parents are allowed in the classroom with no threat of FERPA or HIPPA violations.

89. Moreover, Jane Doe's presence as a third-party handler would be for an educational purpose, an exception to FEPRA, and her confidentiality could be guaranteed as delineated within FERPA itself.

90. The only difference between Jane Doe and other volunteer parents is that Jane Doe has advocated for her son's special needs.

91. Defendants have an innate hatred for Jane and John Doe for their zealous advocacy; Defendants have contrived fictitious excuses for their refusal to accommodate.

92. Defendants' aggressive campaign to ensure their teachers do not have to face parental presence (notably, only by Jane Doe), is depriving John Doe of the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

93. When Jane Doe had a trainer teaching her and John how to handle the service dog, Jane Doe requested that she, the trainer, and John, train at the school to aid in the transition.

94. Despite Jane Doe offering multiple dates and times, CPS refused to agree to any, and the trainer's contract ended before an opportunity to visit CPS.

95. CPS insists that Jane Doe cannot be the handler and maintains that a different third-party handler is necessary, yet CPS fails to identify a viable option.

96. While Jane Doe would prefer to be the handler (as she is already trained and familiar with the service dog), Jane Doe graciously agreed to incorporate an adequately trained District-provided handler instead.

97. To meet John's physician-dictated needs, the handler must be present with the service dog throughout the day and requires training and a relationship because the service dog will not respond to random individuals.

98. Defendants have refused to provide John a reasonable accommodation, and it was not until May of 2026 that Defendants even proposed that District staff could assist with handling John's service dog.

99. On May 11, 2026, Jane Doe and John Doe spoke at the Board meeting.

100. Plaintiffs alerted the Board of Education that CPS was denying John reasonable accommodations and spoke about the disparate treatment of John's service dog not being allowed to use the safe courtyard.

101. John and Jane Doe pleaded for help, even messaging two of the Board members directly, yet Defendant Board of Education failed to provide any support.

102. On May 21, 2026, Jane Doe continued to oppose Defendants' violation of the ADA and sent an email stating, "[t]his is also a civil liberties matter as the school is denying a reasonable request that even aligns with their attorney."

103. Once again, CPS ignored Jane Doe.

104. CPS continued to ignore Jane Doe's requests all summer to resolve who John's third-party handler would be for the upcoming 2026-2027 school year.

105. It was not until a month plus past the start of the 2026-2027 school year that, directly contrary to John's needs, the District proposed a "solution" of a rotating draw of fourteen different full-time employees in the District to walk the dog, not act as a handler.

106. The District's "solution" is incompatible with the service dog's training (the dog will not recognize random people), does not meet John's needs articulated by his physician, and even poses a significant safety risk for John in an emergency or an emergency drill.

107. The District *has* an adequate third-party handler for John: Jane Doe.

108. Rather than adopting the reasonable accommodation, CPS continues to retaliate against John and Jane Doe for their disability advocacy.

109. CPS continues to suggest unviable, retaliatory options.

110. Prior to the 2026-2027 school year, Jane Doe and John Doe attended CPS's open house with the service dog.

111. While John Doe was holding the service dog's leash, Jane Doe was within close range maintaining control over the dog; ready to intervene immediately if necessary.

112. The open house environment was significantly different than a classroom situation in which John Doe's focus is solely on instruction.

113. Defendant Guimont knew John Doe's dog was acting as a service dog and that interaction with the dog was prohibited.

114. Nevertheless, Defendant Guimont purposefully brought one of the District's emotional support animals over to John Doe's service dog in hopes of causing John Doe's service animal to misbehave (thus, providing an excuse to exclude the service animal).

115. The therapy dog lunged at John Doe's service dog.

116. John Doe's service dog did not respond to the therapy dog's aggressive behavior due to the service dog's effective training.

117. Defendant Guimont attempted to instigate a fight between the dogs to contrive pretextual reasons for excluding John Doe's service dog from the educational environment.

118. In light of CPS's failure to provide a reasonable accommodation, John has not returned to school for the 2026-2027 school year.

119. John cannot return to CPS until he receives the services and accommodations he requires and is entitled to under law.

120. John and Jane Doe, individually and through their counsel, have requested to engage CPS in the interactive process.

121. Despite requests, CPS has ignored the requests and/or refused to participate in the interactive process.

122. Instead of providing a reasonable accommodation, CPS has re-initiated a truancy action against John and Jane Doe; threatening potential criminal penalties even though John's absence from school is solely CPS's responsibility.

123. Jane Doe has attempted to bring John and his service dog to CPS more than once this school year, only to be denied a reasonable accommodation and removed from school grounds by CPS.

124. Initially, CPS claimed John was turned away because Jane Doe needed to complete a background check first.

125. Jane Doe had already turned in a background check.

126. Upon being turned away, Jane Doe visited the office to inquire about the status of her background check.

127. The office staff then informed Jane Doe that, contrary to what she had been told, Jane Doe's background check had been approved the week prior.

128. Knowing Jane Doe was in compliance with CPS's request, John attempted to attend school again, only to be told they could not enter because Jane Doe is a parent, a violation of the Revised School Code.

129. CPS attempted to coerce Jane Doe into approving their evaluation of John Doe's mental health, claiming mental health and school attendance are connected.

130. CPS knows John Doe's attendance is unrelated to his mental health, but instead is related to CPS's refusal to provide a reasonable accommodation.

131. Ironically, CPS has entirely disregarded mental health evaluations Jane Doe has provided for the purpose of solely identifying John's special needs.

132. Despite informing the truancy officer that CPS denied John Doe and his service animal equal access to the educational benefits available to others at CPS (therefore denying John Doe a reasonable accommodation and access to the educational environment), Jane Doe received an email from the truancy officer citing MCL 380.1561 and threatening up to Ninety (90) days in jail.

133. On October 2, 2026, CPS formally assigned Jane Doe to a truancy officer even though CPS was fully aware that John Doe's absences are due to CPS's failure to provide John Doe with a reasonable accommodation.

134. On October 21, 2026, Jane Doe was informed that a criminal complaint had been filed against her for violating MCL 380.1561.

135. Jane Doe explicitly requested to engage in the interactive process, stating that she remains ready and able to discuss options that will result in John Doe's return to the classroom.

136. Nevertheless, Defendants have ignored Plaintiffs' requests and refused to engage in the interactive process.

137. Defendants continue lying and making value judgements without providing all the available information and context, and without meeting to engage in the interactive process.

138. During the 2026-2027 school year, John Doe was spotted downtown by CPS employees.

139. John Doe, being on the autism spectrum, goes downtown to visit familiar shops to invoke a sense of routine.

140. Numerous friendly shop owners know to provide safe-spaces to John and to contact Jane Doe if John becomes dysregulated (Jane Doe can unite John with his service animal in no more than three minutes).

141. Because John Doe is not in a learning environment where he must concentrate, remain calm, alert, and attentive, re-orient whenever he becomes distracted, and remain grounded to enjoy the full benefits of the learning environment that are available to others at CPS, he does not regularly bring his service animal with him when he goes downtown (a reasonable accommodation primarily intended to assist John in school).

142. Moreover, the service animal is a reasonable accommodation in the school environment to address John's special needs caused by going to school in an environment where he was previously assaulted and severely injured; a condition which does not exist downtown.

143. Regardless, when John Doe was spotted, he did not have his service dog or Jane Doe with him.

144. Defendants hate John and his mother so much that they weaponized this information by telling the truancy officer that John Doe was downtown without his service dog or Jane Doe, and suggested this as proof John does not need a third-party handler at school.

145. Defendants' manipulation of the events failed to express that John Doe was downtown as parting of his self-regulating routine.

146. Defendants' false assertion that John Doe does not need a third-party handler simply because he was downtown alone is indicative of Defendants' retaliatory intent and the lengths they will go to attack this family.

147. The District's retaliatory insistence on excluding Jane Doe as a viable handler, refusing John his reasonable accommodation, and simultaneously threatening/initiating truancy against John Doe and his mother has resulted in John's exclusion from the educational environment and denial of the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

148. John Doe remains excluded from the equal enjoyment of educational benefits available at CPS.

149. John Doe remains under the manufactured threat of truancy.

150. John Doe is a person with a disability as defined by state and federal law who requires a reasonable accommodation to enjoy the full and equal opportunity to benefit from the public services available at CPS.

151. Jane Doe is the mother of John Doe who has been retaliated against for advocating on John's behalf and demanding compliance with state and federal disability laws.

152. Both Jane and John Doe have been threatened with potential criminal penalties and truancy due to CPS's refusal to accommodate John Doe.

153. CPS has threatened criminal penalties and truancy despite Jane Doe bringing John Doe and his service animal to school and having CPS refuse to meet interactively or provide a reasonable accommodation.

154. CPS has denied John and Jane Doe access to the learning environment.

155. CPS's excuses for denying John Doe access to the learning environment with reasonable accommodations are ludicrous.

156. John and Jane Doe have been harmed by CPS's actions.

157. Wherefore, Plaintiffs state the following Counts against Defendants:

COUNT I

*Violation of Title II of the Americans with Disabilities Act – Failure to Accommodate As to Defendants CPS, Board of Education, Stewart in her official capacity, Guimont in his official capacity, McClellan-VanArsdale in her official capacity, and Heisler in his official capacity*

158. Plaintiffs incorporate the previous paragraphs as if contained herein.

159. Title II of the Americans with Disabilities Act ("ADA") provides that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

160. "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 CFR 35.130(b)(7).

161. CPS is a "public entity" within the meaning of Title II of the ADA.

162. John is a "qualified individual with a disability" within the meaning of Title II of the ADA.

163. John was a qualified individual prior to November 3, 2025; John's conditions were exacerbated by the physical assault he experienced at the school.

164. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler discriminated on the basis of disability when they refused to permit John to attend school with his service dog and allow a reasonable accommodation of Jane Doe as a third-party handler or providing a single CPS employed dedicated trained dog handler, which denied him the benefits of CPS's services, programs, and activities.

165. Rather than engage in a meaningful interactive process, Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler groundlessly asserted that Jane Doe could not be the third-party handler and failed to identify any other reasonable accommodation that would meet John's needs and provide him equal benefits of CPS's services, programs, or activities.

166. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler also denied John and his service animal the equal benefits of CPS's services, programs, or activities on an equal basis as others within the school district by refusing John and his service dog access to the courtyard that the therapy dogs were allowed to use.

167. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler failed to protect John Doe from disability harassment, and the harassment denied John Doe the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

168. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler have failed to, and cannot possibly, demonstrate that allowing Jane Doe to be the dog's third-party handler, or providing a single CPS employed dedicated trained dog handler, would fundamentally alter the nature of the service, program, or activity.

169. Accordingly, Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler discriminated on the basis of disability, in violation of the ADA, by refusing to allow Jane Doe to be the third-party handler or to provide a single CPS employed dedicated trained dog handler.

170. John cannot attend school without a reasonable accommodation, resulting in continuing to harm John Doe.

171. John has suffered damages as a result of Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's failure to provide John with a reasonable accommodation.

172. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT II

*Violation of the Americans with Disabilities Act – Retaliation*
*As to Defendants CPS, Board of Education, Stewart in her official capacity, Guimont in his official capacity, McClellan-VanArsdale in her official capacity, and Heisler in his official capacity*

173. Plaintiffs incorporate the previous paragraphs as if contained herein.

174. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C § 12203.

175. Furthermore, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other

individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C § 12203.

176. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler retaliated against Plaintiffs for opposing an unlawful act under the ADA.

177. Plaintiffs opposed Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's failure to provide John with a reasonable accommodation, resulting in denied benefits of their services, programs, and activities, which was an unlawful act.

178. Plaintiffs opposed Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's unlawful act of refusing John and his service dog equal access to the courtyard that the therapy dogs were allowed to use.

179. Plaintiffs opposed Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's unlawful act of failing to protect John Doe from disability harassment, and the harassment denied John Doe the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

180. Plaintiffs opposed these unlawful acts by continuing to assert John's ADA rights, informing Defendants that they are violating Plaintiffs' civil liberties, and even physically opposing Defendants' violation by continuing to show up to school despite CPS's exclusion.

181. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's retaliation included/includes truancy threats, threats of criminal penalties, unequal and retaliatory treatment of Jane Doe, John Doe, and Jane Doe's family,

groundlessly refusing Jane Doe as a third-party handler, and denying John Doe the full and equal enjoyment of the educational benefits available at CPS in retaliation for Jane Doe's advocacy.

182. John cannot attend school because of Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's retaliation, and Plaintiffs have suffered damages as a result.

183. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT III

*Violation of the Persons with Disabilities Civil Rights Act*
*As to Defendants CPS, Board of Education, Stewart in her official capacity, Guimont in his official capacity, McClellan-VanArsdale in her official capacity, and Heisler in his official capacity*

184. Plaintiffs incorporate the previous paragraphs as if contained herein.

185. Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), provides that, "An educational institution shall not… [d]iscriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." MCL 37.1402.

186. Defendants are an "educational institution" within the meaning of the PWDCRA.

187. John Doe is a "person with a disability" within the meaning of the PWDCRA.

188. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler discriminated against John by refusing a reasonable accommodation to allow

Jane Doe to be John's third-party handler or providing a single CPS employed dedicated trained dog handler at the advice of his physician.

189. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler also discriminated against John by refusing John and his service dog equal access to the courtyard that the therapy dogs were allowed to use.

190. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler failed to protect John Doe from disability harassment, and the harassment denied John Doe the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

191. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's discrimination deprived John of fully utilizing and benefiting from CPS and its services provided, further evidenced by CPS continuing refusal to allow John to attend school.

192. John's disabilities are unrelated to his ability to utilize and benefit from CPS's services.

193. As a result of Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's actions, John has been harmed and suffered damages.

194. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT IV

*Violation of the Persons with Disabilities Civil Rights Act – Retaliation*
*As to Defendants CPS, Board of Education, Stewart in her official capacity, Guimont in his official capacity, McClellan-VanArsdale in her official capacity, and Heisler in his official capacity*

195. Plaintiffs incorporate the previous paragraphs as if contained herein.

196. It is unlawful to retaliate or discriminate against a person because that person has opposed a violation of the PWDCRA. MCL 37.1602.

197. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler retaliated and discriminated against Plaintiffs because they opposed a violation of the PWDCRA as described in this Complaint.

198. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated the PWDCRA by denying John a reasonable accommodation and denying his service dog access to the same areas as therapy dogs, which deprived him of fully utilizing and benefiting from CPS's services.

199. Plaintiffs opposed Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's unlawful act of failing to protect John Doe from disability harassment, and the harassment denied John Doe the full enjoyment and equal opportunity to benefit from the public services, programs, and activities provided by CPS.

200. Plaintiffs opposed Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's PWDCRA violation by continuing to assert John's rights, attempting to have John attend school multiple times, rejecting unreasonable "solutions" for John's physician-determined needs, and explicitly informing CPS that they were violating Plaintiffs' civil liberties.

201. CPS retaliated and discriminated against Plaintiffs by excluding John from school and by threatening John and Jane Doe with truancy, an issue caused by Defendants' own failure to provide John with a reasonable accommodation.

202. As a result of Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's actions, Plaintiffs have been harmed and suffered damages.

203. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT V

*Violation of the First Amendment*
*Via the Vehicle of §1983*
*As to Defendants CPS, Board of Education,*
*Stewart in her personal and official capacity,*
*Guimont in his personal and official capacity,*
*McClellan-VanArsdale in her personal and official capacity,*
*and Heisler in his personal and official capacity*

204. Plaintiffs incorporate the previous paragraphs as if contained herein.

205. Plaintiff can establish a First Amendment retaliation claim by demonstrating the following: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Clark v Patton*, 2026 U.S. Dist. LEXIS 65931, at *7 (ED Mich, Feb. 9, 2026) (citing to Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)).

206. Plaintiffs engaged in protected activity when they advocated for Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler to provide

John with a reasonable accommodation that he is legally entitled to and opposed Defendants' violations of the ADA and PWDCRA and by speaking at a Board meeting regarding the same.

207. Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler took an adverse action against Plaintiffs when they excluded John from school and threatened Jane Doe with truancy and criminal penalties, actions which would deter a person of ordinary firmness from continuing to engage in protected activity.

208. Plaintiffs' First Amendment-protected advocacy for John's rights motivated, at least in part, Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's actions to exclude John from school and threaten Jane Doe with truancy.

209. As a result of Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler's actions, Plaintiffs have been harmed and suffered damages.

210. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT VI

*Violation of Article I, §5 of the Michigan Constitution*
*As to Defendants CPS and Board of Education*

211. Plaintiffs incorporate the previous paragraphs as if contained herein.

212. Article I, §5 of the Michigan Constitution provides that "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Mich. Const. art. I, § 5.

213. “The rights to free speech under the Michigan and federal constitutions are coterminous. *Up & Out of Poverty*, *supra* at 168, 533 N.W.2d 339. Thus, federal authority construing the First Amendment may be used in construing the Michigan Constitution's free speech guarantee.” *Burns v. City of Detroit (On Remand)*, 253 Mich. App. 608, 620–21 (2002), judgment modified, appeal denied in part sub nom. *Burns v. City of Detroit*, 468 Mich. 881, 658 N.W.2d 468 (2003).

214. Accordingly, Plaintiffs can establish retaliation under Article I, §5 of the Michigan Constitution by demonstrating the following: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Clark v Patton*, 2026 U.S. Dist. LEXIS 65931, at *7 (ED Mich, Feb. 9, 2026) (citing to Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)).

215. Plaintiffs engaged in protected activity when they advocated for Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler to provide John with a reasonable accommodation that he is legally entitled to and opposed Defendants’ violations of the ADA and PWDCRA and by speaking at a Board meeting regarding the same.

216. Defendants CPS and Board of Education took an adverse action against Plaintiffs when they excluded John from school and threatened Jane Doe with truancy and criminal penalties, actions which would deter a person of ordinary firmness from continuing to engage in protected activity.

217. Plaintiffs' First Amendment-protected advocacy for John's rights motivated, at least in part, Defendants CPS and Board of Education's actions to exclude John from school and threaten Jane Doe with truancy.

218. As a result of Defendants CPS and Board of Education's actions, Plaintiffs have been harmed and suffered damages.

219. WHEREFORE, Plaintiffs respectfully request this Honorable Court award them the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court does the following:

a. Find that Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated the ADA by failing to provide a reasonable accommodation.

b. Find that Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated the ADA by retaliating against Plaintiffs for opposing an ADA violation.

c. Find that Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated the PWDCRA by denying Plaintiff the full utilization and benefits from the institution or its services provided.

d. Find that Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated the PDWCRA by retaliating against Plaintiffs for opposing a PWDCRA violation.

e. Find that Defendants CPS, Board of Education, Stewart, Guimont, McClellan-VanArsdale, and Heisler violated Plaintiffs' First Amendment rights.

f. Find that Defendants CPS and Board of Education violated Article I, § 5 of the Michigan Constitution by retaliating against Plaintiffs for engaging in protected activity.

g. Find that Plaintiffs suffered damages due to Defendants' actions.

h. Award to Plaintiffs all appropriate damages, compensation, fines, punitive and exemplary damages, and penalties against Defendants available under law in an amount in excess of Seventy-Five Thousand Dollars ($75,000).

i. Award Plaintiffs their attorney fees and costs.

j. Provide any other relief to Plaintiffs that this Honorable Court deems fit.

Respectfully submitted,

Dated: October 21, 2026

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN DOE, a minor;
JANE DOE, on her own behalf
and as next friend of John Doe;

Case No.

Plaintiffs,

Hon.

v

CHARLOTTE PUBLIC SCHOOLS;
CHARLOTTE PUBLIC SCHOOLS BOARD OF EDUCATION;
SUPERINTENDENT MANDY STEWART, in her personal and official capacity;
PRINCIPAL RYAN GUIMONT, in his personal and official capacity;
DIRECTOR OF SPECIAL EDUCATION GRETCHEN MCCLELLAN-VANARSDALE, in her personal and official capacity;
DEAN OF STUDENTS CHRIS HEISLER, in his personal and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

**JURY DEMAND**

In accordance with Fed. R. Civ. P. 38, Plaintiffs formally demand a trial by jury.

Respectfully submitted,

Dated: October 21, 2026



Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com